UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JAMES LOWERY,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action Number<br>4:16-cv-00913-AKK |

## MEMORANDUM OPINION

James Lowery brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that her decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.    PROCEDURAL HISTORY

Lowery filed his application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on May 8, 2013, alleging a disability onset date of April 26, 2013 due to diabetes, "bulging disks [*sic*] in [his] lower back," neuropathy in his feet and legs, "hbp [high blood pressure]," high

cholesterol, nerve pain, and depression. (R. 180, 219). After the SSA denied his application initially and upon reconsideration, (R. 122–31), Lowery requested a hearing before an ALJ, (R. 138–40). The ALJ subsequently denied Lowery's claim, (R. 52–69), and the Appeals Council denied review, (R. 1–4), rendering the ALJ's opinion the final decision of the Commissioner. Lowery then filed this action pursuant to § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 791 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. §§ 404.1520(a)–(f). Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. §§ 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five-step analysis, the ALJ determined that Lowery met the criteria for Step One, because he had engaged in substantial gainful activity

"through the second quarter of 2013, but not thereafter." (R. 54). Next, the ALJ acknowledged that Lowery's impairments of "degenerative disc disease of the lumbar spine with sciatica; diabetes mellitus with polyneuropathy; and edema" met the requirements of Step Two. (*Id.*). The ALJ then proceeded to the next step and found that Lowery did not satisfy Step Three, because he did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 56) (internal citations omitted). In this step, the ALJ acknowledged Lowery's complaints of degenerative disc disease and diabetes with neuropathy and edema, but remarked that Lowery's degenerative disc disease "does not meet the requirements of Medical Listing 1.04 because the longitudinal treatment records do not document evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in the inability to ambulate effective[ly]." (R. 56). Moreover, the severity of Lowery's diabetes did not "meet the requirements of Medical Listing 11.14 because the medical evidence . . . does not establish that [Lowery] has disorganization of motor function." (*Id.*).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that, at his date last insured, Lowery had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a)

5

and 416.967(a)." (R. 57). The ALJ articulated further restrictions, *i.e.*, that Lowery can "lift/carry and push/pull up to ten pounds occasionally [and] less than ten pounds frequently," can "sit for six hours out of an eight-hour workday and stand/walk for two hours out of an eight-hour workday," and should avoid "climbing ladders, ropes, and scaffolds," "kneeling and crawling," "exposure to work at unprotected heights and around hazardous, moving mechanical parts," and "operating a motor vehicle." (*Id.*). In light of Lowery's RFC and the testimony of a vocational expert, the ALJ determined that Lowery was unable to perform any of his past relevant work. (R. 66). Lastly, in Step Five, the ALJ considered Lowery's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Lowery] can perform." (R. 67). Therefore, the ALJ found that Lowery "has not been under a disability, as defined in the Social Security Act, from April 26, 2013." (R. 68).

## V. ANALYSIS

Lowery raises four contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

### A. The ALJ's Alleged Failure to Afford Proper Weight to the Opinion of Dr. Saundra Dalton-Smith

Lowery first contends that the ALJ erred by affording "little weight" to the opinions of his purported treating physician, Dr. Saundra Dalton-Smith. Doc. 9 at 16; (R. 65). The ALJ is required to "clearly articulate the reasons for giving less

6

weight to the testimony of a treating physician." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "Good cause" for refusing to give considerable weight to a treating physician's opinion exists where, among other examples, the physician's opinion was not bolstered by the evidence. *Id.*

As an initial matter, it is not clear that Dr. Dalton-Smith was Lowery's "treating physician," as she only saw Lowery twice before rendering her opinion in this case. *See Snyder v. Comm'r of Soc. Sec.*, 330 F. App'x 843, 849 (11th Cir. 2009) (20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) provide that "the opinion of a treating physician who has 'seen [the claimant] *a number of times and long enough to have obtained a longitudinal picture of* [*the claimant's*] *impairment*' generally is given more weight than an opinion of a non-treating physician) (emphasis added); *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) ("The evidence submitted by appellant's treating physician . . . received all the consideration it was due. [The physician] saw appellant twice and submitted only sketchy, conclusory notes."). However, even if Dr. Dalton-Smith is a treating physician, good cause existed for the ALJ to afford little weight to her opinions. Relevant here, Dr. Dalton-Smith completed a Physical Capacity Evaluation Form stating that Lowery

7

could sit, stand, or walk for one hour at a time, could sit for a total of three hours, stand for a total of two hours, and walk for a total of one hour in an eight-hour workday. (R. 449). Dr. Dalton-Smith added that Lowery could not sit, stand, and walk in combination for an eight-hour period, however, in light of Lowery's "chronic pain due to neuropathy [and] foot [and back] pain," (*id.*), and that Lowery had "chronic," "continuous," and "severe" pain that would likely "lead to absences," (R. 451). For these reasons, Dr. Dalton-Smith concluded that Lowery "would [not] be able to maintain gainful employment." (R. 357).

The ALJ correctly disregarded Dr. Dalton-Smith's opinions. First, with regard to Lowery's ability to maintain employment, the Commissioner correctly notes that "the issue of whether an individual is disabled under the Social Security Act is reserved to the Commissioner." (R. 65). *See Pate v. Comm'r, SSA*, No. 16-12244, 2017 U.S. App. LEXIS 1723, at *3 (11th Cir. Jan. 31, 2017) ("[T]he determination of whether an individual is disabled is reserved to the Commissioner, and no special significance will be given to an opinion on issues reserved to the Commissioner."). Second, as to Dr. Dalton-Smith's assessment of Lowery's physical abilities, the ALJ noted that, "at the time that the opinion was rendered, Dr. Dalton-Smith had a brief treatment history with [Lowery]," (R. 66), and, in fact, had only treated Lowery twice, (R. 319–22, 343–45, 357). Moreover, the ALJ found that "Dr. Dalton-Smith's opinion is without substantial support

8

from the other evidence of record," (R. 66), pointing out that, despite Lowery's complaints of numbness, the medical record indicates that Lowery did not suffer from peripheral edema, and that Lowery's neurological examinations consistently revealed normal sensitivity to touch, (*see* R. 60–62, 321, 324, 237, 341, 344, 347, 350, 361, 364, 368, 373, 376, 425, 428, 431, 433, 436, 441, 455, 458).

Third, the ALJ also found Dr. Dalton-Smith's report of extreme limitations inconsistent with Lowery's activities of daily living, noting that Dr. Robert Estock, the state agency consulting examiner, found that Lowery had only mild limitations in his activities of daily living, (R. 105–06, 114–15), and that Lowery reported caring for his pets, walking next door daily to check on his mother, washing dishes, doing laundry, and cutting the grass using a riding lawnmower, (*see* R. 81–96). Finally, the ALJ found that Dr. Dalton-Smith "relied quite heavily on the subjective report of symptoms and limitations provided by [Lowery], and seemed to uncritically accept as true most, if not all, of what [Lowery] reported." (R. 66).

Based on the court's review of the record, it is clear that the ALJ considered Lowery's full medical history and, in making her determination of Lowery's RFC, properly and comprehensively analyzed the medical evidence as a whole. Accordingly, to the extent Dr. Dalton-Smith may be considered a "treating physician," good cause existed for the ALJ to afford little weight to her opinions. As such, the court concludes that the ALJ properly considered the medical

evidence in determining Lowery's ability to work in spite of his impairments, and made clear her reasons for affording little weight to Dr. Dalton-Smith's opinions.

### B. The ALJ's Alleged Failure to Assess the Intensity and Persistence of Lowery's Symptoms Pursuant to Social Security Ruling 16-3p

Lowery requests remand for further proceedings, because the ALJ purportedly failed to assess the "intensity and persistence of [his] symptoms" pursuant to Social Security Ruling 16-3p, which became effective March 28, 2016 and which, Lowery claims, applies retroactively. Doc. 9 at 24. SSR 16-3p announced that the SSA would depart from "assess[ing] the 'credibility' of an applicant's statements," and instead "focus on the 'intensity and persistence of [the applicant's] symptoms.'" *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (citing 81 Fed. Reg. 14166, 14167). Relevant here, however, Lowery fails to cite any binding authority to support his contention that SSR 16-3p applies retroactively. *See* doc. 9 at 24–25 (citing *Cole*, a Seventh Circuit case which does not endorse (or otherwise discuss) retroactive application, and *Mendenhall v. Colvin*, No. 3:14-cv-3389, 2016 U.S. Dist. LEXIS 105404 (C.D. Ill. Aug. 9, 2016), which found that retroactive application was "appropriate," *id.* at *10). Moreover, even assuming that the SSA intended SSR 16-3p to apply retroactively, a retroactive application would not help Lowery, because the ALJ did not reach her decision by evaluating Lowery's overall credibility. Rather, the ALJ evaluated Lowery's symptoms by reviewing Lowery's allegations, medical records, treatment notes, and activities of

daily living. (*See* R. 56–67). For these reasons, Lowery's request for remand is due to be denied.

**C. The ALJ's Alleged "Sit and Squirm" Analysis**

Lowery also contends that the ALJ erred by engaging in an improper "sit and squirm" analysis when noting Lowery's "generally unpersuasive appearance and demeanor while testifying at the hearing" and that Lowery "showed no evidence of pain or discomfort while testifying." Doc. 9 at 28. As the Commissioner correctly notes, however, the ALJ is not prohibited from noting such observations. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985) (ALJ may "consider[] the claimant's appearance and demeanor during the hearing"). An ALJ's consideration of these factors finds even more support in situations where, as here, the ALJ "did note [the claimant's] demeanor but did not discredit [the claimant's] testimony solely on this basis." *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987). As explained previously, the ALJ thoroughly reviewed Lowery's allegations, medical records, treatment notes, and activities of daily living in reaching her disability determination. (*See* R. 56–67).

**D. The Appeals Council's Alleged Failure to Review New Submissions that Post-Dated the ALJ's Decision**

Finally, Lowery alleges that the Appeals Council "refused to review new evidence solely because it was dated after the ALJ decision without considering whether the new evidence was chronologically relevant." Doc. 9 at 29. To support

his contention, Lowery cites *Washington v. SSA*, in which the Eleventh Circuit held that, "[b]ecause [a physician's] opinions [were] new, material, and chronologically relevant evidence, the Appeals Council was required to consider them," and "the Appeals Council's refusal to [do so] . . . was an error of law."  806 F.3d 1317, 1323 (11th Cir. 2015).  The reliance on *Washington* is misplaced, however, because the record plainly indicates that the Appeals Council considered the new evidence from Anniston Medical Clinic.  (*See* R. 2 ("We also looked at medical records from Anniston Medical Clinic dated January 28, 2015 through February 13, 2015, . .. April 17, 2015 . . ., June 10, 2015 . . ., and July 22, 2015 . . . ."); R. 8–39 (listing these medical records on the Appeals Council's Exhibit List)).  Moreover, even taking this new evidence into account, substantial evidence still supported the ALJ's denial of benefits.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Lowery is not disabled and has the RFC to perform sedentary work with additional restrictions is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 26th day of April, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE